**17SL-CC02446**

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

# MASTER EQUIPMENT LEASE AGREEMENT



50 Briar Hollow, Suite 600, Houston, TX 77027
Please fax completed Agreement to 1-866-329-8795. Questions or need assistance? Call 1-866-551-8795

| LESSEE INFORMATION | Lessee Name<br>Neighbors Health System Inc. | | Federal Tax ID Number<br>45-5531405 |
|---|---|---|---|
| | Headquarters Street Address/City/County/State/Zip<br>11200 Broadway Ste. 2320 Pearland TX 77584 | | |
| | Lease Number<br>412B196C | | Lessee Phone Number<br>713 436 9600 |

This MASTER EQUIPMENT LEASE AGREEMENT ("**Master Lease**") is made this September 14, _____, 20 15 by and between 3i International ("Lessor") and the Lessee referenced above ("Lessee"). The parties agree as follows:

**1. MASTER LEASE.** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the equipment, software, fixtures, personal property and/or other property described in each schedule ("Equipment Schedule") from time to time signed by Lessor and Lessee that incorporates this Master Lease by reference (such property together with all replacements, repairs, additions and accessions thereto being referred to herein as the "**Equipment**"). Each Equipment Schedule that incorporates this Master Lease is sometimes hereinafter referred to as a "**Lease**." Each Lease shall constitute an agreement separate and distinct from this Master Lease and any other Lease. In the event of a conflict between the terms and conditions of an Equipment Schedule and the terms and conditions of this Master Lease, the terms and conditions of the Equipment Schedule shall govern, but only with respect to the corresponding Lease

**2. TERM.** The obligations of the parties shall commence upon the full execution of this Master Lease and shall continue until each party has satisfied their respective obligations in this Master Lease and under each Lease. The "**Lease Term**" for each Lease shall commence on the date Lessee accepts the Equipment by executing a Delivery and Acceptance Certificate ("**Commencement Date**") and, unless terminated earlier as provided in the Lease, shall continue for the number of months specified in the Equipment Schedule from the first Rental Due Date (as defined below). If the Equipment Schedule provides for a Renewal Option, the Lease Term shall include any Renewal Term(s) selected by the Lessee and/or any other extension as provided in the Lease.

**3. RENT; ADJUSTMENTS.** Lessee agrees to pay Lessor rent for the Equipment, in the amount specified in the Equipment Schedule ("Rent"), due and payable on each Rental Due Date during the Lease Term without notice or demand, and any other charges, advances or reimbursements due Lessor pursuant to the Lease, due upon demand by Lessor from time to time. Lessee further agrees to pay Lessor, on the first Rental Due Date, interim rent for any partial first month during the Lease Term in an amount equal to 1/30th of the Rent for each day from and including the Commencement Date to and excluding the first Rental Due Date. The first Rent payment is due on or before the Commencement Date, as invoiced by Lessor, unless the Equipment Schedule is specified that zero (0) advance payments are due, in which case the first Rent payment will be due on the date specified by Lessor in the month following the Commencement Date, and the remaining Rent payments will be due on the same day of each subsequent month. Lessee authorizes Lessor to adjust the Rent payment up or down by not more than 15% if the total amount paid by Lessor for the purchase, delivery and installation of the Equipment, including any trade-up and buyout amounts (the "Total Cash Price") differs from the originally estimated and documented price thereof.   Lessee further authorizes Lessor to increase the Rent payment, if the Commencement Date occurs after the date Lessor approved Lessee's application for the relevant Lease, to reflect any increase (i) from the date of such approval and (ii) to the Commencement Date in the interest rate swaps ("Swaps Rate") that most-closely approximates the term of such Lease (determined as of the last day in the week ending prior to each of such

dates). The Swaps Rate is published in the Federal Reserve Statistical release H.15 and can be found at http://www.federalreserve.gov/releases/h15/update/. The Rent payment will be a fixed amount for the term of the Lease. All Rent shall be payable to Lessor and delivered to Lessor's office or such other place as Lessor may designate in writing at any time. An advance Rent payment shall be applied as the first Rent payment under the Lease. If more than one Rent payment is made by Lessee in advance, the second (and any other advance Rent payment) shall be applied to rental payments scheduled under the Lease in inverse order of maturity Should Lessee fail to pay any part of any Rent within 3 days of its due date, Lessor shall (a) impose a late charge equal to 10% of the amount of the late payment or $20, whichever is greater, and (b) commencing 30 days after any such payment is due under the Lease, assess interest on such delinquent payment until paid at the rate of 1.5% per month.  However, if such late charge and/or interest exceeds the maximum amount of interest permitted by applicable law, such excess shall be reduced to the maximum rate permitted by law. IF THE LEASE IS REPLACING AN EXISTING LEASE, THE NEW RENT PAYMENT WILL INCLUDE THE BALANCE OF THAT LEASE AND RESULT IN A GREATER AGGREGATE COST TO LESSEE

**4. NET LEASE; RENT PAYMENTS ABSOLUTE.** Each Lease is a net lease and Lessee's obligations to pay Rent in full when due are absolute and unconditional and shall not be subject to any abatement, reduction, set off, counterclaim, recoupment, defense or other right which Lessee may have or assert against Lessor, the supplier of the Equipment or any other person or entity

**5. DELIVERY AND INSTALLATION.** Lessee will select the Equipment to meet its specifications and, in reliance thereon, Lessor will order such Equipment from the supplier(s) specified by Lessee or, if Lessee has previously entered into a purchase order or supply contract, such purchase order or supply contract shall be deemed assigned to Lessor upon execution of the relevant Equipment Schedule.  Upon delivery and acceptance by Lessee of the Equipment designated in an Equipment Schedule, Lessee will execute and deliver to Lessor a Delivery and Acceptance Certificate.  Lessee shall make all delivery arrangements with each supplier and, at Lessee's expense, will pay all transportation, packing, taxes, duties, installation, testing and other charges in connection with the delivery, installation and acceptance of the Equipment.  Lessor shall have no liability to Lessee for delivery delays or failure of the supplier to deliver goods meeting the purchase order specifications.  Lessee is hereby authorized to act as Lessor's agent in inspecting, accepting and rejecting delivery of Equipment, provided that all claims asserted by any supplier by reason of Lessee's rejection of any goods shall be Lessee's sole responsibility to defend, resolve and pay

**6. DISCLAIMER OF WARRANTIES.** Lessee acknowledges that Lessor is not the manufacturer or supplier of the Equipment, and is not the agent of any such manufacturer or supplier. No representation or promise made by any manufacturer or supplier of the Equipment will be deemed made by or binding upon Lessor  LESSOR MAKES NO

**EXHIBIT "1"**

EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO: THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE DESIGN OR CONDITION OF THE EQUIPMENT; THE QUALITY, CAPACITY OR SUITABILITY OF THE EQUIPMENT; COMPLIANCE OF THE EQUIPMENT WITH THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; PATENT OR COPYRIGHT INFRINGEMENT; OR LATENT DEFECTS, IT BEING AGREED THAT THE EQUIPMENT IS LEASED "AS IS" AND THAT ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE, ARE TO BE BORNE BY LESSEE AT ITS SOLE RISK AND EXPENSE. Lessor will have no liability to Lessee or third parties for any direct, indirect, special or consequential damages of any kind or nature arising out of this Master Lease, any Lease, or in connection with the Equipment.

**7. ASSIGNMENT OF WARRANTY RIGHTS.** Lessor hereby assigns to Lessee, for the Lease Term, any manufacturer's and/or supplier's warranties with respect to the Equipment and, provided no Default has occurred and remains uncured, Lessee is hereby authorized to enforce such warranties, in its name, at Lessee's sole expense

**8. TITLE.** Title to the Equipment shall remain solely with Lessor  No right, title or interest in or to the Equipment shall pass to Lessee other than the right to possess and use the Equipment for the Lease Term and such transfer is conditioned upon Lessee's compliance with the terms and conditions of the Lease. Lessee, at its expense, will defend Lessor's title to the Equipment and will keep the Equipment free from all claims, liens, encumbrances and legal processes of Lessee's creditors and other parties, except for those claims created by or through Lessor. At Lessor's request, Lessee shall affix identification plates or markings to the Equipment clearly indicating Lessor's ownership  If any Lease is deemed to be a lease intended for security, to secure Lessee's obligations under such Lease and under all other indebtedness at any time owing by Lessee to Lessor, Lessee grants to Lessor a first priority security interest in the Equipment subject to such Lease and any and all proceeds from the use, rental or sale of such Equipment. LESSEE IRREVOCABLY AUTHORIZES LESSOR TO FILE A COPY OF THIS LEASE AND/OR ANY OTHER DOCUMENT AS A FINANCING STATEMENT AND APPOINT LESSOR OR ITS DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, IF REQUIRED, SUCH FINANCING STATEMENTS COVERING THE EQUIPMENT AS LESSOR MAY DEEM NECESSARY AND REIMBURSE LESSOR FOR COST OF SUCH FILINGS AND LIEN SEARCHES

**9. PERSONAL PROPERTY.** All items of Equipment shall at all times be and remain personal property notwithstanding that any such Equipment may now or hereafter be affixed to realty. Lessee, at its expense, shall obtain all such waivers as Lessor may reasonably require to assure Lessor's title and interest in, access to and right to remove the Equipment.

**10. USE, LOCATION AND INSPECTION OF EQUIPMENT**  So long as Lessee is not in Default under the Lease, Lessee shall be entitled to possess and use the Equipment for its business purposes in conformity with all applicable laws, ordinances, regulations, the requirements of all applicable insurance policies and of any applicable manufacturer's or supplier's warranties  Lessee shall bear all costs in connection with the operation and maintenance of the Equipment. The Equipment shall be delivered, at Lessee's direction and responsibility, to the location specified in the Equipment Schedule and shall not thereafter be removed from such location without the advance written consent of Lessor. Lessor shall have the right from time to time during Lessee's normal business hours to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition or proper maintenance of the Equipment  Lessee shall not, except with Lessor's prior written consent, part with possession or control of the Equipment or dispose of or encumber any interest in the Equipment or under the Lease.

**11. TAXES AND FEES**  Lessee will pay all excise taxes, sales and use taxes, personal property taxes, and all other taxes and charges which may be imposed by any governmental entity during the term of this Lease. arising from the use, acquisition, ownership or leasing of the Equipment, whether due before or after termination of the Lease  Lessee will reimburse Lessor for all administrative costs associated with the preparation, filing, payment, and other costs necessary to properly administer taxes associated with the Equipment. Where required by law, Lessor will file the personal property tax returns with respect to the Equipment, and Lessee shall pay Lessor in advance, at the time(s) Lessor requires, the taxes that Lessor anticipates will be due during the year.

**12. RISK OF LOSS.** Lessee is responsible for any loss, theft or destruction of, or damage to, the Equipment (collectively "Loss") from any cause at all, whether or not insured, until it is delivered to Lessor at the end of this Lease  Lessee is required to make all Rent Payments even if there is a Loss. Lessee must notify Lessor in writing immediately of any Loss. Then, at Lessor's option, Lessee will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, (b) replace such Equipment with like equipment in good repair, condition and working order acceptable to Lessor, with clear title to such replacement equipment vested in Lessor, or (c) pay Lessor the amounts specified in Section 19 below

**13. MAINTENANCE, REPAIRS AND ALTERATIONS.** Lessee shall, at its expense, keep all of the Equipment in good repair, condition and working order and shall furnish all required parts and servicing so that the value and condition of the Equipment will be maintained and preserved, reasonable wear and tear excepted. Lessee shall not, without the written approval of Lessor, make any alterations or modifications to the Equipment except for upgrades that do not impair the value, utility or marketability of the Equipment. All such alterations, modifications or upgrades will become part of the Equipment and Lessor's property, without charge, free of any liens or encumbrances. Lessee shall keep software that is part of any Equipment current with all updates, revisions, upgrades and maintenance fixes, whether obtained from the supplier, licensor or any other source.

**14. INSURANCE.** Lessee shall provide and maintain at its expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value, naming Lessor as loss payee, and (b) public liability insurance in a minimum amount of one million dollars and third party property insurance, in each instance naming Lessor as an additional insured. Lessee shall provide to Lessor certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount (including the minimum amount for public liability insurance stated above) and with companies acceptable to Lessor, and will provide that Lessor will be given 30 days advance notice of any cancellation or material change of such insurance.  Lessor reserves the right to reject Lessee's insurance carrier for reasonable cause.   IF LESSEE DOES NOT GIVE LESSOR EVIDENCE OF INSURANCE ACCEPTABLE TO LESSOR, LESSOR HAS THE RIGHT, BUT NOT THE OBLIGATION, TO OBTAIN INSURANCE COVERING LESSOR'S INTEREST IN THE EQUIPMENT FOR THE TERM OF THIS LEASE, INCLUDING ANY RENEWAL OR EXTENSIONS. LESSOR MAY ADD THE COSTS OF ACQUIRING AND MAINTAINING SUCH INSURANCE AND LESSOR'S FEES FOR LESSOR'S SERVICES IN PLACING AND MAINTAINING SUCH INSURANCE (COLLECTIVELY, "INSURANCE CHARGE"), ON WHICH LESSOR MAY EARN A PROFIT, TO THE AMOUNTS DUE FROM LESSEE UNDER THIS LEASE.  Such insurance may duplicate coverage provided under Lessee's existing policy. Lessee will pay the Insurance Charge in equal installments allocated to the remaining Rent payments  Nothing in this Lease will create an insurance relationship of any type between Lessor and any other person. Lessee acknowledges that Lessor is not required to secure or maintain any insurance, and Lessor will not be liable to Lessee if Lessor terminates any insurance coverage that Lessor arranges.  Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks, or drafts issued with respect to any Loss under any insurance policy relating to the Equipment

**15. RETURN OF EQUIPMENT; RESTOCKING FEE.** Upon expiration, cancellation or termination of the Lease Term, or upon Lessor's demand after a Default, all, but not less than all, of the Equipment shall be immediately returned to Lessor as provided herein unless (a) Lessee has exercised a purchase option provided hereunder or (b) Lessor has

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

requested that Lessee provide temporary on-site storage, after which the Equipment shall be returned to Lessor. In making such return, Lessee shall deliver the Equipment to such place or places within the continental United States as Lessor may designate in writing. All costs and expenses of the return shall be borne by Lessee, including without limitation, the costs of removing, dismantling, assembling, packing, insuring at full value, transporting and unloading of the Equipment. Lessor reserves the right to charge Lessee a restocking fee equal to two (2) Rent payments. All such returned Equipment shall be in good condition and the state of repair required by Section 10 herein, ordinary wear and tear excepted, and upon Lessor's request, Lessee will provide Lessor with a certification from the manufacturer or its authorized representative as to the Equipment's condition. To the extent that any portion of the Equipment consists of software or other licensed products, Lessee will return all tangible items of software and destroy all intangible items of software, certify in writing to Lessor that Lessee has complied with the above requirements, has not retained such software in any form and will not use the software after termination. Lessee acknowledges that it is Lessee's sole duty to remove all sensitive or confidential data stored within the Equipment prior to returning it.

**16.  PURCHASE AND RENEWAL OPTIONS.**  If no Default exists under a Lease, Lessee will have the option at the end of the Lease Term or any Renewal Term to purchase all (but not less than all) of the Equipment at the Purchase Option price shown on the front of the Equipment Schedule, plus any applicable taxes. Unless the Purchase Option price is $1.00, Lessee must give Lessor at least 90 days written notice before the end of the initial Lease Term that Lessee will purchase the Equipment or that Lessee will return the Equipment to Lessor. If Lessee does not give Lessor such written notice or if Lessee does not purchase or deliver the Equipment in accordance with the terms and conditions of the Lease, the Lease will automatically renew on a monthly basis until Lessee provides such notice and delivers the Equipment to Lessor. During such renewal(s) the Rent payment will remain the same. Lessor may cancel an automatic renewal term by sending Lessee written notice 30 days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, Lessor will use its reasonable judgment to determine the Equipment's in use and in place fair market value. If Lessee does not agree with Lessor's determination of the Equipment's fair market value, the fair market value (in use and in place) will be determined at Lessee's expense by an independent appraiser selected by Lessor. Upon payment of the Purchase Option price, plus applicable taxes, Lessor shall transfer its interest in the Equipment to Lessee "AS IS, WHERE IS" without any representation or warranty whatsoever and this Lease will terminate. With respect to items of Equipment consisting of software, Lessee's right to continue use such software will be subject to the applicable license agreement.

**17.  INDEMNIFICATION.**  Lessee assumes liability for and agrees at its own expense to indemnify, hold harmless and defend Lessor and any assignee, and their respective employees and agents (each an "Indemnitee"), from and against any and all claims, liabilities, losses, damages, and expenses (including attorneys' fees and legal expenses and Lessor's internal administration costs) of every kind or nature arising out of or in connection with: (a) the Lease, including but not limited to, any breach of a representation or warranty, a Default (as defined hereinafter) and/or proceeding in bankruptcy with respect thereto; (b) the ordering, purchase, delivery, installation, ownership, selection, possession, leasing, operation, use, maintenance, transportation and return of the Equipment (including latent and other defects, whether or not discoverable by Lessee or Lessor); (c) any claims based on strict tort liability or warranty and any claim for patent, trademark or copyright infringement, (d) any claim relating to any interruptions of service, loss of business or consequential damages, and (e) any data Lessee has stored within the Equipment (collectively, "Claims"). Lessee shall not be required to indemnify an Indemnitee against Claims to the extent such Claims result directly from the actual, but not imputed, gross negligence or willful misconduct of such Indemnitee. Lessee shall, at its own cost and expense, defend any and all Claims which may be brought against any Indemnitee, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against any Indemnitee in any such action or actions. If the Purchase Option shown on the front of any Equipment Schedule to this Lease is other than a nominal purchase option, then Lessee

acknowledges that Rental Payments are calculated on the assumption that Lessor will realize certain income tax benefits under state and federal law as the owner of the Equipment and the Lessor under this Lease. As used herein a "Tax Benefit Loss" shall mean (1) the Lessor's loss of or loss of the right to claim or recapture all of or any part of the federal or state income tax benefits Lessor anticipated as a result of entering into this Lease and owning the Equipment or (2) taxes incurred by Lessor as a result of the inclusion in Lessor's income for federal or state income tax purposes of any amount other than Rental Payments hereunder due to any modification of the Equipment, other action or failure to act by Lessee. If Lessor suffers a Tax Benefit Loss for any reason other than (i) Lessor's sale of the Equipment other than due to a Default, (ii) failure of Lessor to have sufficient income to utilize its anticipated tax benefits or failure to claim such tax benefits in a timely manner or (iii) a change in tax law (including a change in tax rates) that becomes effective after the date of this Lease, then Lessee shall pay to Lessor a lump sum amount that, after the payment of all federal, state and local taxes and using the same assumptions as to tax benefits and other matters Lessor used in originally calculating the Rental Payments will, in Lessor's reasonable opinion, maintain Lessor's net after-tax rate of return and cash flows with respect to this Lease as they would have been enjoyed if such Tax Benefits Loss had not occurred. Lessor will notify Lessee of any claim that may give rise to Indemnification under this paragraph but will be under no obligation to contest any such claim. In any event, Lessor shall control all aspects of any settlement and contest and, whether such contest is successful or not, Lessee shall promptly pay all legal fees and other out-of-pocket expenses incurred by Lessor in defending such claim. For purposes of this paragraph, the term "Lessor" includes any member of an affiliated group which Lessor is or may become a member of in the event that consolidated tax returns are filed for such affiliated group for federal income tax purposes. The Indemnification provisions of this Section 17 shall continue in full force and effect notwithstanding the expiration or other termination of this Master Lease or any Lease.

**18.  EVENTS OF DEFAULT.**  Each of the following is a "Default" under this Lease: (a) Lessee fails to pay any Rent payment or any other payment within 10 days of its due date; (b) Lessee fails to perform any of its other obligations under this Lease or in any other agreement now existing or hereafter made with Lessor or with any of Lessor's affiliates and such failure continues for 10 days after Lessor notifies Lessee of it; (c) Lessee becomes insolvent or is dissolved, or Lessee assigns its assets for the benefit of its creditors, or enters (voluntarily or involuntarily) any bankruptcy or reorganization proceeding; (d) any guarantor of this Lease ("Guarantor") dies, does not perform its obligations under the guaranty or any other agreement, now existing or hereafter made with Lessor, or becomes subject to one of the events listed in clause (b) or (c) above; (e) Lessee or any Guarantor consolidates with, merges with or into, or conveys or leases all or a substantial part of its assets to any person or engages in any other form of reorganization, or there is a change in the legal structure of Lessee or any Guarantor, in each case which results, in the sole opinion of Lessor, in a material adverse change in Lessee's or such Guarantor's ability to perform its obligations under the Lease or any Guaranty, respectively, or there is otherwise a change in control of Lessee or any Guarantor; (f) Lessee or Guarantor makes or gives any false or misleading representations or warranties at anytime or in any manner in connection with the Lease; (g) Lessee or any Guarantor shall be in default under any obligation for the payment of borrowed money or the deferred purchase price of, or for the payment of any rent due with respect to, any real or personal property. A Default with respect to any Equipment Schedule shall constitute a Default for all Equipment Schedules and all other agreements with Lessor and its affiliates.

**19.  REMEDIES.**  If a Default occurs, Lessor may do one or more of the following: (a) Lessor may cancel or terminate this Lease or any or all other agreements that Lessor has entered into with Lessee; (b) Lessor may require Lessee to immediately pay Lessor, as compensation for loss of Lessor's bargain and not as a penalty, a sum equal to (i) all unpaid Rent payments for the remainder of the term plus Lessor's anticipated residual interest in the Equipment, if applicable, discounted to present value at a simple interest rate per annum equal to the the discount rate of the Federal Reserve Bank of New York on the Commencement Date of the Lease, plus (ii) all other amounts due or

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

that become due under this Lease; (c) Lessor may require Lessee to deliver the Equipment to Lessor as set forth herein and terminate use of any software component of the Equipment; (d) Lessor or its agent may peacefully repossess the Equipment without court order and Lessee will not make any claims against Lessor for damages or trespass or any other reason; and (e) remedy such Default, including making repairs or modifications to the Equipment, for the account and expense of Lessee, and Lessee agrees to reimburse Lessor for all of Lessor's costs and expenses; (f) apply any deposit or other cash collateral or sale or remarketing proceeds of the Equipment at any time to reduce any amounts due to Lessor; and (g) exercise any other right or remedy which may be available to Lessor under applicable law.  Notice of Lessor's intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, or any other notice whatsoever are hereby waived by Lessee and any Guarantor. Interest on all unpaid balances more than thirty days past due shall accrue at the lesser of 1.5% per month, or the maximum rate allowed by law, until paid in full.  The exercise of any of the foregoing remedies by Lessor will not constitute a termination or cancellation of the Lease unless Lessor so notifies Lessee in writing.  At any sale of the Equipment pursuant to this Section 19, Lessor may bid for the Equipment.  Notice required, if any, of any sale or other disposition hereunder by Lessor shall be satisfied by the mailing of such notice to Lessee at least ten (10) days prior to such sale or other disposition.  In the event Lessor takes possession and disposes of the Equipment, the proceeds of any such disposition shall be applied in the following order: (i) to all of Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling or leasing the Equipment and/or otherwise enforcing Lessor's rights hereunder; (ii) to the extent not previously paid by Lessee, to pay Lessor for any amounts then remaining unpaid under the Lease; (iii) to reimburse Lessee for any sums previously paid by Lessee as damages hereunder; and (iv) the balance, if any, shall be retained by Lessor   Lessee will remain liable for any amounts that remain due after Lessor has applied such net proceeds  Termination of a Lease under this Section 19 shall not affect Lessee's duty to perform Lessee's obligations under such Lease to Lessor in full.  Lessee agrees to reimburse Lessor on demand for any and all costs and expenses incurred by Lessor in enforcing its rights and remedies hereunder following the occurrence of a Default, including, without limitation, reasonable attorney's fees, the costs of repossession, storage, insuring, re-letting, selling and disposing of any and all Equipment, all pre-judgment and post-judgment actions taken by Lessor and all actions taken by Lessor in any bankruptcy proceeding involving the Lessee, the Equipment and/or any Guarantor and Lessor's internal administration costs.   Lessor's remedies under the Lease shall not be deemed exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available at law or equity.  Waiver of any default or breach of the Lease shall not be construed as a waiver of subsequent or continuing defaults or breaches.

**20.   LESSEE'S REPRESENTATIONS, WARRANTIES AND COVENANTS.** Lessee hereby represents, warrants and covenants to Lessor that with respect to this Master Lease and each Equipment Schedule executed hereunder:

(a) If Lessee is a corporation, partnership or other business entity, Lessee (i) is duly organized, validly existing and in good standing under the laws of its state of organization, (ii) is qualified to do business in every jurisdiction in which such qualification is necessary and where the Equipment is located, (iii) has the power and authority to own its properties and carry on its business as now being conducted and to execute and perform this Master Lease and each Lease, and (iv) has duly authorized the execution, delivery and performance of this Master Lease and each Lease;

(b) No approval is required from any regulatory body, board, authority or commission, nor from any other administrative or governmental agency with respect to the execution and performance of this Master Lease or any Lease, or if required, such approval has been obtained;

(c) This Master Lease and each Lease constitutes the legal, valid and binding obligation of Lessee, enforceable in accordance with its terms, and the execution, delivery and performance hereof by Lessee will not violate any provision of any law, any order of any court or of any other

agency of government, or any indenture, agreement or other instrument to which Lessee or any Guarantor is a party, or by or under which Lessee or any Guarantor is bound, or be in conflict with, result in a breach of, or constitute (with due notice and/or lapse of time) a default under any such indenture, agreement or other instrument;

(d) All balance sheets, statements of profit and loss and other financial data that have been delivered to Lessor with respect to Lessee or any Guarantor (i) are complete and correct in all material respects, (ii) accurately present the financial condition of Lessee and such Guarantor as of the date, and the results of its operations for the periods for which, the same have been furnished, and (iii) have been prepared in accordance with generally accepted accounting principles consistently followed throughout the periods covered thereby; all balance sheets disclose all known liabilities, direct and contingent, as of their respective dates; and there has been no change in the condition of Lessee or any Guarantor, financial or otherwise, since the date of the most recent financial statements delivered to Lessor with respect to Lessee and such Guarantor, other than changes in the ordinary course of business, none of which changes has been materially adverse;

(e) No mortgage, deed of trust or other lien of any nature whatsoever which now covers or affects, or which may hereafter cover or affect, any property or interest therein of the Lessee, now attaches or hereafter will attach to the Equipment or in any manner affects or will affect adversely Lessor's right, title and interest therein;

(f) There are no suits or proceedings pending, or to the knowledge of Lessee, threatened, in any court or before any regulatory commission, board or other administrative governmental agency against or affecting Lessee or any Guarantor, which will have a material adverse effect on the financial condition or business of Lessee or such Guarantor;

(g) All information concerning the financial condition and business operation of Lessee submitted to Lessor pursuant to this Master Lease or any Equipment Schedule shall be true and correct;

(h) Lessee will furnish Lessor (a) within one hundred twenty (120) days after the end of each fiscal year, a copy of Lessee's financial statements for such fiscal year prepared by an independent certified public accountant and (b) within forty-five (45) days after the end of each fiscal quarter, the internal financial statements of Lessee as at the end of such fiscal period, including a balance sheet and income statement, all prepared in accordance with generally accepted accounting principles consistently applied, unaudited but certified to be true and accurate, subject to normal year-end adjustments, by Lessee's principal executive officer or its principal financial officer. In addition, Lessee shall promptly inform Lessor of any Default (as defined herein) or any events or changes in the financial condition of the Lessee which may result in a material adverse change in Lessee's financial condition; and

(i) Lessee will not change its state of incorporation or organization or its name as it appears in official filings in the state of its incorporation or organization without giving Lessor at least 10 days prior notice

**21. ASSIGNMENT.**  LESSEE MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR ITS INTEREST IN THIS LEASE Lessor may, without notifying Lessee, sell, assign, or transfer this Lease and Lessor's rights to the Equipment.  Lessee agrees that the new owner will have the same rights and benefits that Lessor has now under this Lease but not Lessor's obligations. The rights of the new owner will not be subject to any claim, defense or set-off that Lessee may have against Lessor. Upon request, Lessee will acknowledge in writing its receipt of notice of any such assignment.

**22. SEVERABILITY.**  Any provision of this Master Lease or any Lease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition and unenforceable without invalidating the remaining provisions hereof.  To the extent permitted by applicable law, Lessee hereby waives any provision of law that prohibits or renders unenforceable any provisions hereof in any respect.

**23. NOTICES.**  All notices, reports, demands and other documents provided for herein shall be deemed to have been given or made when

sent by first class certified mail, return receipt requested or delivered by a nationally-recognized overnight courier, addressed to Lessor or Lessee at their respective addresses set forth in the heading to this Master Lease or such other addresses as either of the parties hereto may designate in writing to the other from time to time for such purpose.

**24. AMENDMENTS; WAIVERS; FAX SIGNATURES; MISCELLANEOUS.** This Master Lease and the Equipment Schedules executed by Lessor and Lessee constitute the entire agreement between Lessor and Lessee with respect to the Equipment. No term or provision of any Lease may be changed, waived, amended or terminated except by a written agreement signed by both Lessor and Lessee, except that Lessor may insert certain information in the Equipment Schedules to conform to facts indicated in the applicable Delivery & Acceptance Certificates, including complete descriptions of Equipment, serial numbers and costs and consequential adjustments to the Rent, and to correct obvious mistakes It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected under applicable law, and any such excess payment will be applied to Rent payments in inverse order of maturity, and any remaining amounts will be refunded to Lessee.  If more than one Lessee has signed the Lease, each of the Lessees shall be jointly and severally liable for performing all of the obligations and duties under the Lease   A fax version of Lessee's signature on the Lease shall be binding upon Lessee as if originally signed; however, the Lease shall be binding upon Lessor when signed by Lessor   Lessor and Lessee agree that the version of the Lease with the Lessor's original signature shall constitute the original authoritative version

**25. UCC ARTICLE 2A; GOVERNING LAW, WAIVERS AND JURISDICTION.** Each Lease shall be governed by and interpreted under the internal laws of the State of New Jersey.   If Article 2A of the UCC is applicable to the Lease, the Lease will be considered a "finance lease" as that term is defined therein. Lessee acknowledges that Lessee either has a) reviewed approved and received a copy of the supply contract or purchase order or b) received from Lessor the identity of the supplier, been informed that Lessee has certain rights under the supply contract or purchase order, and that Lessee may contact the supplier for a description of those rights. Lessee waives all rights and remedies under UCC Section 2A-508 through 2A-522, including, but not limited to (1) any right to repudiate or

cancel the Lease; (2) any right to reject tender of the Equipment or to revoke acceptance of the Equipment; (3) any right to recover damages for any breach of warranty; and (4) any right to deduct damages resulting from Lessor's default from any amount owing under the Lease.  Lessee agrees that if there is a conflict between the Lease and any provision under Article 2A of the UCC Code, the terms of the Lease shall prevail

IF THE LESSOR OR ITS ASSIGNEE SHALL COMMENCE ANY JUDICIAL PROCEEDING IN RELATION TO ANY MATTER ARISING UNDER A LEASE, LESSEE IRREVOCABLY AGREES THAT ANY SUCH MATTER MAY BE ADJUDGED OR DETERMINED IN ANY COURT OR COURTS IN THE STATE OF LESSOR'S OR ITS ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS, OR ANY COURT OR COURTS IN THE LESSEE'S STATE OF RESIDENCE, OR IN ANY OTHER COURT HAVING JURISDICTION OVER THE LESSEE OR THE LESSEE'S ASSETS, ALL AT THE SOLE DISCRETION OF THE LESSOR.   LESSEE HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE JURISDICTION OF ANY SUCH COURT SO ELECTED BY LESSOR IN RELATION TO SUCH MATTERS. FURTHER, IN ANY LITIGATION ARISING UNDER ANY LEASE, LESSEE VOLUNTARILY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY.  For security purposes and to help the government fight terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each individual or commercial entity that enters into a customer relationship with the financial institution.  For this reason, Lessor may request the following identifying information:  name, address, date of birth. Lessor may also ask other questions or request other documents meant to verify Lessee's individual or commercial identity.

**26. PARTIES.** The provisions of this Master Lease shall be binding upon, and inure to the benefit of, the assigns, representatives and successors of the Lessor and Lessee

IN WITNESS WHEREOF, Lessor and Lessee have each caused this Master Lease to be duly executed, as of the date indicated in the heading to this Master Lease.

3i International

By: _____

Print Name: _____ Attorney In Fact

Print Title: _____ Sharon Martin

Date: _____ Team Leader

Neighbors Health System Inc

By: _____

Print Name: _____ JOHN _____

Print Title: _____ CFO

Date: _____

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

## AMENDMENT TO MASTER EQUIPMENT LEASE AGREEMENT

**Master Equipment Lease Agreement Number:** 41261960 _____ **Dated:** September 14, 2015

This  Amendment to Master Equipment Lease Agreement number 41261960 (the "*Amendment*") is effective as of November 6, 2015 and is made part of that Master Equipment Lease Agreement (the "*MELA*") by and between a) All Points Solution, Inc. dba 3i International as "*Lessor*" and Neighbors Health System, Inc. as "*Lessee*".

Each capitalized term used but not defined in this Amendment will have the meaning given to it in the MELA. In the event of any conflict among the terms of this Amendment and the terms of the MELA, the terms of this Amendment will control and prevail.

### PRELIMINARY STATEMENTS

**WHEREAS,** Lessor and Lessee have executed the MELA on or about September 14, 2015, with the understanding that various wholly-owned subsidiaries of Lessee would subsequently enter into equipment schedules for certain office equipment and any related parts and accessories thereto (the "*Equipment*"); and

**WHEREAS,** on or about November 5, 2015, Lessee filed a Certificate of Amendment with the Secretary of State of Texas, by which Lessee changed its legal entity name from Neighbors Health System, Inc. to Neighbors Legacy Holdings, Inc.; and

**WHEREAS,** on or about November 6, 2015 Neighbors Legacy Holdings, Inc. subsequently formed Neighbors Health System, LLC, a wholly-owned subsidiary; and

**WHEREAS,** the parties wish to add Neighbors Health System, LLC as a lessee to the MELA and all related and subsequent Schedules thereto; and

**WHEREAS,** the parties desire to amend the MELA to reflect the appropriate lessees thereto.

**NOW THEREFORE,** in consideration of the promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties amend the MELA as follows:

1. As of November 6, 2015, "Neighbors Health System, Inc." is hereby changed to "Neighbors Legacy Holdings, Inc. f/k/a Neighbors Health System, Inc."

2. As of November 6, 2015, "Neighbors Health System, LLC" is hereby added to the MELA as a Co-Lessee.

3. All other terms and conditions in the MELA shall remain in full force and effect.

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of November 6, 2015.

ALL POINTS SOLUTION, INC. DBA 3i INTERNATIONAL

Lessor
X _____
Authorized Signature

Dara Rapillo

Print Name and Title
Senior Account Manager

NEIGHBORS LEGACY HOLDINGS, INC. FKA NEIGHBORS HEALTH SYSTEM, INC.

Lessee
X _____
Authorized Signature

Print Name and Title   John Deckm / CFO

NEIGHBORS HEALTH SYSTEM, LLC

Co-Lessee
X _____
Authorized Signature

Print Name and Title   John Deckm / CFO

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM



## SECRETARY'S CERTIFICATE

### SECRETARY'S CERTIFICATE RELATING TO
### INCUMBENCY AND CORPORATE RESOLUTIONS

The undersigned, _Dharmesh Patel_ _____ Secretary of

Neighbors GP, LLC a Texas limited liability company (the "**Company**") hereby certifies as follows:

1. I am the duly elected, qualified and acting Secretary of the Company and have the custody of the Company's records and minutes.

2. The following named individuals: (a) have been properly elected or appointed to the offices indicated below; (b) currently hold such office at this time; and (c) have provided the specimen signatures appearing beside their names.

| Name | Title | Specimen Signature |
|------|-------|--------------------|
| Setul Patel | Director | |
| John Decker | Director | |

3. The following resolutions were duly adopted by the Board of Directors of the Company and remain in effect as of the date of this Certificate:

   RESOLVED, that certain limited partnerships in which the Company acts as the General Partner (including those listed on Exhibit A hereto, and others that may be formed subsequently), may from time to time enter into a Master Equipment Lease Agreement ("**MELA**") with All Points Solution, Inc. dba 3i International ("**3i**"), including one or more Equipment Lease Schedules ("**Schedules**") thereto for office equipment (collectively, the MELA and each Schedule are referred to herein individually as a "**Lease**" and collectively as "**Leases**"); and

   RESOLVED, that the Company (through its duly authorized Directors/Officers) shall sign the Leases on behalf of the limited partnerships; and

   RESOLVED, that Setul Patel and John Decker, whose titles and specimen signatures are set forth above, are duly authorized to sign and deliver agreements and other documents related to the Leases on behalf of the Company; and

   RESOLVED, that 3i is authorized to rely upon the resolutions set forth above until receipt by it at its principal place of business of written notice of any change therein.

4. I am one of the duly authorized officers of the Company that make certificates on its behalf and I have caused this certificate to be executed and the seal of the Company to be placed on this certificate this _____1_____ day of _September_, 2015.

(Corporate Seal)

Secretary

## Exhibit A to Secretary's Certificate

1. NEC Harlingen Emergency Center, LP
2. NEC Kingwood Emergency Center, LP
3. NEC Lakeline Emergency Center, LP
4. NEC Midland Emergency Center, LP
5. NEC Mueller Emergency Center, LP
6. NEC Odessa Emergency Center, LP
7. NEC Orange Emergency Center, LP
8. NEC Pasadena Emergency Center, LP
9. NEC Pearland Emergency Center, LP
10. NEC Port Arthur Emergency Center, LP
11. NEC Texas City Emergency Center, LP
12. NEC Tyler Emergency Center, LP
13. NEC Yorktown Emergency Center, LP
14. NEC Zaragoza Emergency Center, LP
15. Neighbors Physician Group, PLLC
16. Neighbors Practice Management, LLC
17. NEC Baytown Emergency Center, LP
18. NEC Beaumont Emergency Center, LP
19. NEC Bellaire Emergency Center, LP
20. NEC Crosby Emergency Center, LP
21. NEC Eastside Emergency Center, LP

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

**SECRETARY'S CERTIFICATE**

### SECRETARY'S CERTIFICATE RELATING TO
### INCUMBENCY AND CORPORATE RESOLUTIONS

The undersigned, _____DHARMESH PATEL_____ Secretary of

Neighbors Legacy Holdings, Inc. a Texas corporation (the "**Corporation**") hereby certifies as follows:

1. I am the duly elected, qualified and acting Secretary of the Corporation and have the custody of the corporate records, minutes and corporate seal.

2. The following named individuals: (a) have been properly elected to the office of the Corporation indicated below as of November 6, 2015; (b) currently hold such office at this time; and (c) have provided the specimen signatures appearing beside their names.

| Name | Title | Specimen Signature |
|---|---|---|
| Setul Patel | President and CEO | |
| John Decker | CFO | |

3. The following resolutions were duly adopted by the Board of Directors of the Corporation and remain in effect as of the date of this Certificate:

> RESOLVED, that the Corporation is permitted to enter into a Master Equipment Lease Agreement ("**MELA**") together with Neighbors Health System, LLC (the "**LLC**") as lessee, and with All Points Solution, Inc. dba 3i International ("**3i**") as lessor, including Equipment Lease Schedules ("**Schedules**") thereto from time to time for office equipment (collectively, the MELA and each Schedule are referred to herein individually as a "**Lease**" and collectively as "**Leases**"); and

> RESOLVED, that certain wholly-owned subsidiaries of the Corporation which act as operating entities (including those listed on Exhibit A hereto, and others that may be formed subsequently), shall also enter into the Leases as Co-Lessees; and

> RESOLVED, that the Corporation, the LLC, and any such Co-Lessee shall be jointly and severally liable for the obligations under the Leases; and

> RESOLVED, that Setul Patel and John Decker, President and CEO and CFO, respectively, are duly authorized to sign and deliver agreements and other documents related to the Leases on behalf of the Corporation; and

> RESOLVED, that 3i is authorized to rely upon the resolutions set forth above until receipt by it at its principal place of business of written notice of any change therein.

4. I am one of the duly authorized officers of the Corporation that make certificates on its behalf and I have caused this certificate to be executed and the seal of the Corporation to be placed on this certificate this ___2___ day of ___February___, 2016.

(Corporate Seal)

Secretary _Dharmesh Patel, m.D._

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

## Exhibit A to Secretary's Certificate

1. NEC Harlingen Emergency Center, LP
2. NEC Kingwood Emergency Center, LP
3. NEC Lakeline Emergency Center, LP
4. NEC Midland Emergency Center, LP
5. NEC Mueller Emergency Center, LP
6. NEC Odessa Emergency Center, LP
7. NEC Orange Emergency Center, LP
8. NEC Pasadena Emergency Center, LP
9. NEC Pearland Emergency Center, LP
10. NEC Port Arthur Emergency Center, LP
11. NEC Texas City Emergency Center, LP
12. NEC Tyler Emergency Center, LP
13. NEC Yorktown Emergency Center, LP
14. NEC Zaragoza Emergency Center, LP
15. Neighbors Physician Group, PLLC
16. Neighbors Practice Management, LLC
17. NEC Baytown Emergency Center, LP
18. NEC Beaumont Emergency Center, LP
19. NEC Bellaire Emergency Center, LP
20. NEC Crosby Emergency Center, LP
21. NEC Eastside Emergency Center, LP

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

## SECRETARY'S CERTIFICATE

### SECRETARY'S CERTIFICATE RELATING TO
### INCUMBENCY AND COMPANY RESOLUTIONS

The undersigned, _Dhamesh Patel_ Secretary of

Neighbors Health System, LLC a Texas limited liability company (the "**Company**") hereby certifies as follows:

1. I am the duly elected, qualified and acting Secretary of the Company and have the custody of its records, minutes and seal.

2. The following named individuals: (a) have been properly elected to the office of the Company indicated below as of November 6, 2015; (b) currently hold such office at this time; and (c) have provided the specimen signatures appearing beside their names.

| Name | Title | Specimen Signature |
|------|-------|-------------------|
| Setul Patel | CEO | |
| John Decker | CFO | |

3. The following resolutions were duly adopted by the Board of Directors of the Company and remain in effect as of the date of this Certificate:

   RESOLVED, that the Company is permitted to enter into a Master Equipment Lease Agreement ("MELA") together with Neighbors Legacy Holdings, Inc. (the "Corporation") as lessee, and with All Points Solution, Inc. dba 3i International ("3i") as lessor, including Equipment Lease Schedules ("Schedules") thereto from time to time for office equipment (collectively, the MELA and each Schedule are referred to herein individually as a "**Lease**" and collectively as "**Leases**"); and

   RESOLVED, that certain wholly-owned subsidiaries of the Corporation which act as operating entities (including those listed on Exhibit A hereto, and others that may be formed subsequently), shall also enter into the Leases as Co-Lessees; and

   RESOLVED, that the Company, the Corporation and any such Co-Lessees shall be jointly and severally liable for the obligations under the Leases; and

   RESOLVED, that Setul Patel and John Decker, each a Director, are each duly authorized to sign and deliver agreements and other documents related to the Leases on behalf of the Company; and

   RESOLVED, that 3i is authorized to rely upon the resolutions set forth above until receipt by it at its principal place of business of written notice of any change therein.

4. I am one of the duly authorized officers of the Company that make certificates on its behalf and I have caused this certificate to be executed and the seal of the Company to be placed on this certificate this ____2____ day of _February_, 2016.

(Company Seal)

Secretary _Dharnesh Patel, M.D._

Electronically Filed - St Louis County - July 06, 2017 - 05:05 PM

### Exhibit A to Secretary's Certificate

1. NEC Harlingen Emergency Center, LP
2. NEC Kingwood Emergency Center, LP
3. NEC Lakeline Emergency Center, LP
4. NEC Midland Emergency Center, LP
5. NEC Mueller Emergency Center, LP
6. NEC Odessa Emergency Center, LP
7. NEC Orange Emergency Center, LP
8. NEC Pasadena Emergency Center, LP
9. NEC Pearland Emergency Center, LP
10. NEC Port Arthur Emergency Center, LP
11. NEC Texas City Emergency Center, LP
12. NEC Tyler Emergency Center, LP
13. NEC Yorktown Emergency Center, LP
14. NEC Zaragoza Emergency Center, LP
15. Neighbors Physician Group, PLLC
16. Neighbors Practice Management, LLC
17. NEC Baytown Emergency Center, LP
18. NEC Beaumont Emergency Center, LP
19. NEC Bellaire Emergency Center, LP
20. NEC Crosby Emergency Center, LP
21. NEC Eastside Emergency Center, LP