**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL BANK OF ST. LOUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-02214 ERW |
| | ) | |
| NEC AMARILLO EMERGENCY CENTER, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss or in the Alternative to Transfer Venue to the Southern District of Texas [10].

**I.      BACKGROUND**

Defendant Neighbors Health System, Inc., ("Neighbors") owns and manages twenty-nine emergency centers throughout Texas.[1] Between May 2015 and September 2016, Neighbors entered into multiple agreements with 3i International to lease IT equipment and services for use in both Neighbors' headquarters and in its emergency centers. Three of these lease agreements were sold, assigned, and transferred to EverBank Commercial Finance, Inc., ("Everbank"). These three assigned lease agreements include: (1) a value lease agreement numbered 20206873, dated August 11, 2015; (2) a master equipment lease agreement numbered 41261960, dated September 14, 2015; and (3) a master equipment lease agreement numbered 41395501, dated July 14, 2016. Everbank subsequently sold, assigned, and transferred these three lease agreements to Central Bank of St. Louis ("Central Bank").

---

[1] Neighbors Health System, Inc., Neighbors Health, LLC, and Neighbors' emergency centers hereafter collectively and individually referred to as "Neighbors."

1

All three lease agreements contain a forum selection provision. The two master equipment lease agreements contain the following provision, in part:

> IF THE LESSOR OR ITS ASSIGNEE SHALL COMMENCE ANY JUDICIAL PROCEEDING IN RELATION TO ANY MATTER ARISING UNDER A LEASE, LESSEE IRREVOCABLY AGREES THAT ANY SUCH MATTER MAY BE ADJUDGED OR DETERMINED IN ANY COURT OR COURTS IN THE STATE OF LESSOR'S OR ITS ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS, OR ANY COURT OR COURTS IN THE LESSEE'S STATE OF RESIDENCE, OR IN ANY COURT HAVING JURISDICTION OVER THE LESSEE OR THE LESSEE'S ASSETS, ALL AT THE SOLE DISCRETION OF THE LESSOR. LESSEE HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE JURISDICTION OF ANY SUCH COURT SO ELECTED BY LESSOR IN RELATION TO SUCH MATTERS.

The value lease agreement contains the following provision, in part:

> You consent to jurisdiction and venue of any state or federal court in the state of the Lessor or its assignee has its principal place of business and waive the defense of inconvenient forum.

All three lease agreements also contain language regarding assignment of the lease agreements. The two master lease equipment agreements contain the following provision, in part:

> ASSIGNMENT… Lessor may, without notifying Lessee, sell, assign, or transfer this Lease and Lessor's rights to the Equipment. Lessee agrees that the new owner will have the same rights and benefits that Lessor has now under this Lease but not Lessor's obligations.

The value lease agreement contains the following provision, in part:

> ASSIGNMENT … We may sell, assign, or transfer this Agreement without notice. You agree that if we sell, assign, or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that the new Lessor will not be subject to any claims, defenses, or offsets that you may have against us.

Neighbors alleges it conducted an internal audit in early 2017, which revealed "outrageous costs associated with the 3i Agreements, the double billing, the discrepancy between what was quoted and what was provided and other significant issues." As a result, Neighbors stopped payment on the leases "until an accounting and reconciliation can be completed." On

2

May 11, 2017, Neighbors filed an action in state court in Harris County, Texas, ("Texas Action") against 3i International and EverBank alleging claims of fraud, breach of contract, unjust enrichment and equitable estoppel relating to the three leases. On June 28, 2017, Neighbors filed an amended petition to include claims against additional defendants, including Central Bank, to the extent that such defendants were found to be assignees of the lease. On August 7, 2017, Central Bank filed its Special Appearance Objecting to Personal Jurisdiction pursuant to Texas Rule of Procedure 120a,[2] arguing the Texas court did not have personal jurisdiction over Central Bank because the underlying leases include forum selection clauses and Central Bank does not have minimum contacts in Texas.

On August 4, 2017, Central Bank initiated this action against Neighbors claiming breach of contract with respect to all three leases because Neighbors improperly defaulted on its lease obligations. Central Bank requests $2,115,221.02, the amount allegedly indebted to Central Bank, plus prejudgment interest at the rate of 1.5% per month from June 5, 2017, and Central Bank's reasonable attorneys' fees and costs.

Neighbors filed its Motion to Dismiss or in the Alternative to Transfer Venue to the Southern District of Texas on August 28, 2017. In its accompanying memorandum, Neighbors argues this Court lacks personal jurisdiction over the defendants because Neighbors does not have sufficient personal contacts in Missouri. In the alternative, Neighbors asks this Court invoke the doctrine of *forum non conveniens* and transfer the case to the Southern District of Texas. In its memorandum in opposition, Central Bank argues Neighbors consented to personal jurisdiction in this Court by signing the lease agreements containing the forum selection clauses.

---

[2] Under Texas Rule of Procedure 120a, a party may object to the court's exercise of personal jurisdiction over the defendant by entering a special appearance in open court.

In its reply, Neighbors argues the first-filed rule bars this Court from considering this case because the Texas Action involves the same dispute and originated at an earlier date. It also alleges the forum selection clauses are not mandatory and further states Central Bank cannot utilize them to select a forum because there is no admissible evidence of assignment to Central Bank. In its surreply, Central Bank claims the first-filed rule should not be applied because "compelling circumstances" exist which warrant nonapplication of the rule. It further argues the forum selection clauses prevent this Court from applying the first-filed rule, stating it has met its burden of proving it is a valid assignee to the leases and the forum selection clauses are enforceable whether characterized as "mandatory" or "permissive." Central Bank asks this Court to "maintain jurisdiction over this matter" despite parallel litigation in the Texas Action because Neighbors "did not have the right to choose where any such litigation would be adjudged."

## II.     DISCUSSION

It is well established that "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985), *quoted in Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir.1993). The "first-filed rule" is not applied in a "rigid, mechanical, or inflexible" manner, but is applied to best serve the interests of justice. *Id.* Courts apply the first-filed rule unless the case involves "compelling circumstances." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), *quoted in Northwest Airlines*, 989 F.2d at 1005. "The purpose of this rule is to promote efficient use of judicial resources." *Orthmann*, 765 F.2d at 121.[3]

---

[3] This Court recognizes the disagreement among federal courts as to the applicability of the first-filed rule to cases involving concurrent litigation in state and federal courts and that it is traditionally applied to litigation dually pending in federal courts. However, this Court has

The Eighth Circuit has instructed district courts to pay particular attention to two "red flags" when determining whether the case involves the "compelling circumstances" warranting an exception to the first-filed rule: "first, where the first suit was filed after the other party gave notice of its intention to sue; and, second, that the action is one for declaratory judgment rather than for damages or equitable relief." *Boatmen's First Nat'l Bank v. Kansas Pub. Employees Retirement Sys.,* 57 F.3d 638, 642 (8th Cir.1995) (quoting *Northwest Airlines*, 989 F.2d at 1007). The *Northwest* court explained that a declaratory action "may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Northwest Airlines*, 989 F.2d at 1007. Thus, when such an action is filed, the Court should examine for "bad faith" and ask whether there is a

---

previously found the first-filed rule is applied with equal force without regard to whether the parallel litigation is in a state or a federal court. *See Commercial Union Ins., Cos. v. Torbaty*, 955 F.Supp. 1162, 1163 n. 1 (E.D.Mo.1997). *But see*, *Central States Indus. Supply, Inc. v. McCullough*, 218 F.Supp.2d 1073, 1092 (N.D. Iowa 2002) ("The court recognizes, and the parties address in their briefs, the split among the federal courts regarding the applicability of the first-filed rule to concurrent litigation filed in a state court and a federal court. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982) ("the court initially seized of a controversy should be the one to decide the case.... It should make no difference whether the competing courts are both federal courts or a state and federal court with undisputed concurrent jurisdiction.") (citations omitted); *United Artists Theatre Circuit, Inc. v. Federal Communications Comm'n*, 147 F.Supp.2d 965, 979 n. 12 (D.Ariz.2000) (stating that the first-filed rule "is no less applicable when the courts set in competition against each other are a federal court and a state court."); *but see Flack v. U.S.*, 1996 WL 628317, at *1 (D.Ariz. Aug.14, 1996) ("The doctrine of federal comity is a discretionary doctrine which permits one federal district court to decline to exercise jurisdiction over a matter if a complaint has been filed in another federal district court.") (citing *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 749 (9th Cir.1979)) (overlooking first-filed rule on grounds of judicial economy between litigation in D.C. Circuit Court of Appeals and Federal District Court for the Central District of California, but stating "In its classic formulation, the [federal] comity doctrine permits a district court to decline jurisdiction over a matter if a complaint has already been filed in another district."); *see Commercial Union Ins., Cos. v. Torbaty*, 955 F.Supp. 1162, 1163 n. 1 (E.D.Mo.1997) ("Typically, the first-filed rule is applied when an action is filed in two federal courts. However, the rule is applied with equal force when an action is filed in federal court and state court.") (citing *Merrill Lynch*, 675 F.2d at 1173); *Andersen Windows, Inc. v. Delmarva Sash & Door Co.*, 2002 WL 1424570, at *5 (D.Minn. June 28, 2002) (applying first-filed rule with equal force to a concurrent action in federal and state court) (citing *Commercial Union Ins., Cos.*, 955 F.Supp. at 1163 n. 1)).

reason for the plaintiff to have requested the relief other than to win the "race to the courthouse" and obtain a favorable forum. *Id.*; *see also Commercial Union Ins., Cos.. v. Torbaty*, 955 F.Supp. 1162, 1163 (E.D.Mo. 1997).

In both the Texas Action and the action before this Court, Central Bank has asserted the applicability of the forum selection clauses and objected to the Texas court's exercise of personal jurisdiction over Central Bank. Because this duplicative issue concerns the jurisdiction of the court where the lawsuit was first filed, the question of whether to apply the first-filed rule is more complicated. Pursuant to Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Accordingly, jurisdiction relates back to the filing of a complaint. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982). Thus, should the Texas court determine it does indeed have personal jurisdiction over Central Bank, that jurisdiction would have attached at the time of the filing of the complaint, which was well before Central Bank's filing of its complaint in this action. By the same logic, should the Texas court conclude it does not have jurisdiction over Central Bank, jurisdiction would have never "attached" to that court, and this Court would not need to further consider application of the first-filed rule.

In *Merrill Lynch*, the Eighth Circuit stressed its concerns associated with the inherent "friction between federal and states courts" faced with the same dispute:

> Several judicial doctrines discourage needless conflict between the separate judicial systems. *See, e.g., Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)* ("Younger" abstention). The continued vitality and independence of concurrent judicial systems require our sensitive consideration of ongoing proceedings in state courts. *See, e.g., Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941). In short, federalism concerns require that a federal court "tread lightly" when a state proceeding is already underway. *See, e.g., Southern California Petroleum Corp. v. Harper*, 273 F.2d 715, 718-20 (5th Cir. 1960).

6

675 F.2d at 1173. In light of these concerns, this Court hesitates to make any determination concerning the Texas court's jurisdiction over Central Bank and the applicability of the forum selection clauses.

This Court further notes "[t]he applicability of the venue selection clause is an issue of fact in and of itself, and even in cases involving a disputed forum selection clause, the appropriate method for objecting to venue is by way of a motion or a responsive pleading in the pending suit, rather than by filing suit in a separate forum." *Hospah Coal*, 673 F.2d at 1163 ("The fact that a venue selection clause is involved does not negate the requirements of rule 12(b). Were it otherwise, a party to such a contract would be invading the province of the courts to decide issues of venue."). Central Bank has already adhered to standard procedure by filing its Special Appearance Objecting to Personal Jurisdiction, and this Court will not preempt the Texas court's ruling on that motion by now considering the same issue in this action.

For the foregoing reasons, this Court finds it is in the best interest in the administration of justice to **STAY the current proceedings** in this Court until the Texas court rules on Central Bank's Special Appearance Objecting to Personal Jurisdiction. At that point, this Court will have a hearing concerning Neighbors' Motion to Dismiss or in the Alternative Transfer Venue to the Southern District of Texas [10].

So Ordered this 30th day of October, 2017.

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**